# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

IDA ADAMS, *et al.*,

*Plaintiffs-Appellants*,

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. ET AL.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MDL No. 2924

## ANSWERING BRIEF OF GENERIC DEFENDANTS-APPELLEES AND "STORE BRAND" DEFENDANTS-APPELLEES

Thomas J. Yoo
Amy McVeigh
Daniel K. Winters
**HOLLAND & KNIGHT LLP**
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
213-896-2400
thomas.yoo@hklaw.com
amy.mcveigh@hklaw.com
daniel.winters@hklaw.com

*Counsel for Glenmark
Pharmaceuticals Inc., USA and
Glenmark Pharmaceuticals Ltd.*

Richard M. Barnes
Sean Gugerty
**GOODELL DEVRIES
LEECH & DANN, LLP**
One South Street, 20th Floor
Baltimore, MD 21202
rmb@gdldlaw.com
sgugerty@gdldlaw.com
*Counsel for L. Perrigo
Company, and Perrigo
Research & Development
Company*

(*Additional counsel listed on following pages*)

Neal Seth
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-4179
nseth@wiley.law

*Counsel for Ajanta Pharma Ltd.,
Ajanta Pharma USA Inc., Torrent
Pharma Inc., and Heritage
Pharmaceuticals, Inc.*

Terry Henry
Melissa F. Murphy
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5334
THenry@BlankRome.com
MFMurphy@BlankRome.com

*Counsel for Apotex Corp.*

Paul J. Cosgrove
**UB GREENSFELDER LLP**
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5000
pcosgrove@ubglaw.com

Georgia Hatzis
**UB GREENSFELDER LLP**
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113
(216) 583-7000
ghatzis@ubglaw.com

*Counsel for Amneal Pharmaceuticals
LLC & Amneal Pharmaceuticals of
New York, LLC*

Kevin M. Bandy
**UB GREENSFELDER LLP**
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5000
kbandy@ubglaw.com

*Counsel for Aurobindo Pharma
USA, Inc., and Aurohealth LLC*

John R. Ipsaro
**UB GREENSFELDER LLP**
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5104
jipsaro@ubglaw.com

*Counsel for Dr. Reddy's Laboratories,
Inc., Dr. Reddy's Laboratories Limited
and Dr. Reddy's Laboratories SA*

Geralyn M. Passaro
**LITCHFIELD CAVO LLP**
600 Corporate Drive
Suite 600
Fort Lauderdale, FL 33334
(954) 689-3000
passaro@litchfieldcavo.com

*Counsel for Hikma Pharmaceuticals
USA, Inc. and Hikma Pharmaceuticals
International, Ltd.*

Jason Reefer
**PIETRAGALLO GORDON
ALFANO BOSICK & RASPANTI,
LLP**
301 Grant Street, Suite 3800
Pittsburgh, PA 15219
(412) 263-2000
JMR@Pietragallo.com

*Counsel for Mylan Institutional LLC,
Mylan Inc., Mylan Pharmaceuticals
Inc., Ranbaxy Inc., Sun Pharmaceutical
Industries, Inc., and Sun
Pharmaceutical Industries, Ltd.*

Asher A. Block
**LEWIS BRISBOIS BISGAARD &
SMITH LLP**
550 E. Swedesford Road
Suite 270
Wayne, PA 19087
(215) 977-4100
asher.block@lewisbrisbois.com

*Counsel for Granules USA, Inc.
and Granules India Ltd*

Robert F. Elgidely
**FOX ROTHSCHILD LLP**
One Biscayne Tower
2 South Biscayne Boulevard,
Suite 2750
Miami, FL 33131
(305) 442-6543
relgidely@foxrothschild.com

*Counsel for Lannett Company,
Inc.*

Jennifer Snyder Heis
**UB GREENSFELDER LLP**
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
(513) 698-5058
jheis@ubglaw.com

*Counsel for PAI Holdings, LLC, f/k/a
Pharmaceutical Associates, Inc.*

Donald R. McMinn
**HOLLINGSWORTH, LLP**
1350 1 Street NW
Washington, DC 20005
(202) 898-5800
dmcminn@hollingsworthllp.com

*Counsel for Sandoz Inc.*


Arthur J. Liederman
Nicole M. Battisti
**MORRISON MAHONEY LLP**
Wall Street Plaza
88 Pine Street
Suite 1900
New York, NY 10005
(212) 825-1212
aliederman@morrisonmahoney.com
nbattisti@morrisonmahoney.com

John W. Eichlin
Douglas M. Tween
**LINKLATERS LLP**
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
john.eichlin@linklaters.com
douglas.tween@linklaters.com

*Counsel for Strides Pharma, Inc.*


Lori Gail Cohen
Sara K. Thompson
**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NW
Suite 2500
Atlanta, GA 30305
(678) 553-2385
cohenl@gtlaw.com
thompsons@gtlaw.com

Elliott H. Scherker
Brigid F. Cech Samole
**GREENBERG TRAURIG, LLP**
333 S.E. 2nd Ave, Ste 4400
Miami, FL 33131
scherkere@gtlaw.com
cechsamoleb@gtlaw.com

*Counsel for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Ivax Pharmaceuticals,
LLC f/k/a Ivax Pharmaceuticals, Inc.,
Actavis Mid Atlantic, LLC and Watson
Laboratories, Inc.*

Clifford Katz
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800
ckatz@kelleydrye.com

*Counsel for Wockhardt USA LLC
and Wockhardt Ltd.*

Nichole M. Mooney
**DEAN, MEAD, EGERTN,
BLOODWORTH, CAPOUANO &
BOZARTH, P.A.**
Post Office Box 2346
Orlando, Florida 32802
(407) 841-1200
nmooney@deanmead.com

*Counsel for Zydus Pharmaceuticals
USA, Inc. and Cadila Healthcare, Ltd.*

Sarah E. Johnston
Robyn S. Maguire
Kian J. Hudson
**BARNES & THORNBURG, LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 284-3798
sarah.johnston@btlaw.com
robyn.maguire@btlaw.com
kian.hudson@btlaw.com
*Counsel for CVS Pharmacy, Inc.,
Duane Reade, Inc., Walgreen Co.,
and Walgreens Boots Alliance, Inc.*

William F. Northrip
**SHOOK, HARDY & BACON LLP**
111 S. Wacker Drive, Suite 4700
Chicago, Illinois  60606
wnorthrip@shb.com
(312) 704-7798
*Counsel for Walmart Inc. and Sam's West, Inc.*

No. 23-12742
*Adams v. Boehringer Ingelheim Pharmaceuticals, Inc. et al.*

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Eleventh Circuit Rule 26.1-1, undersigned counsel hereby certifies that the previously filed Certificate remains correct.

Dated:     July 25, 2024                    Respectfully submitted,

*/s/ Thomas J. Yoo*

## STATEMENT REGARDING ORAL ARGUMENT

The Generic and Store Brand Defendants-Appellees respectfully request oral argument because of the extensive procedural history and issues involved in this MDL proceeding and in Plaintiffs' initial brief. Oral argument will assist the Court in resolving these issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITY .....................................................................................iv

STATEMENT REGARDING ADOPTION OF BRIEFS OF
OTHER PARTIES .................................................................................................1

STATEMENT OF JURISDICTION.......................................................................1

INTRODUCTION ..................................................................................................2

STATEMENT OF THE ISSUES............................................................................3

STATEMENT OF THE CASE ...............................................................................4

STANDARD OF REVIEW ....................................................................................7

SUMMARY OF THE ARGUMENT .....................................................................7

ARGUMENT ..........................................................................................................9

   I.     Plaintiffs Have Forfeited Their Chance To Raise Preemption
        Arguments in This Appeal................................................................9

   II.    Notwithstanding Plaintiffs Fatal Procedural Errors, the District Court
        Properly Held "Misbranding" and "Stop Selling" Claims Were
        Preempted. ......................................................................................13

   III.   The District Court Properly Rejected Plaintiffs' Argument that "Sub-
        Duties" Should Control the Preemption Analysis in the ACELC and
        MMC. ..............................................................................................20

   IV.   Federal Law Also Preempts Plaintiff's Failure-to-Warn-Through-the-
        FDA Claim. .....................................................................................24

CONCLUSION ................................................................................27

CERTIFICATE OF COMPLIANCE ................................................28

CERTIFICATE OF SERVICE ........................................................29

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001)................................................................9, 19, 21, 24, 25

*Douglas Asphalt Co. v. QORE, Inc.*,
   657 F.3d 1146 (11th Cir. 2011) ........................................................23

*Drager v. PLIVA USA, Inc.*,
   741 F.3d 470 (4th Cir. 2014) ...........................................................21

*Ellis v. C.R. Bard, Inc.*,
   311 F.3d 1272 (11th Cir. 2002) ........................................................24

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992)..........................................................................19

*Gardley-Starks v. Pfizer, Inc.*,
   917 F. Supp. 2d 597 (N.D. Miss. 2013)............................................17

*Grubbs v. Medtronic, Inc.*,
   No. 2:18-CV-01468, 2019 WL 3288263 (N.D. Ala. July 22, 2019).................25

*Guarino v. Wyeth*, LLC,
   719 F.3d 1245 (11th Cir. 2013) ........................................7, 8, 21, 22

*Mensing v. Wyeth, Inc.*,
   588 F.3d 603 (8th Cir. 2009) ...........................................................14

*Metz v. Wyeth, LLC*,
   No. 8:10-CV-2658, 2011 WL 5024448 (M.D. Fla. Oct. 20, 2011)....................17

*Mink v. Smith & Nephew, Inc.*,
   860 F.3d 1319 (11th Cir. 2017) ........................................9, 21, 25

---

[1] Pursuant to 11th Cir. R 28-1(e), the cases upon which Generic Defendants primarily rely on are marked with an asterisk (*).

*Moretti v. Mut. Pharm. Co.*,
852 F. Supp. 2d 1114 (D. Minn. 2012)..................................................17

*Moretti v. PLIVA, Inc.*,
No. 2:08-CV-00396, 2012 WL 628502 (D. Nev. Feb. 27, 2012) ......................17

*Mut. Pharm. Co. v Bartlett*,
570 U.S. 472 (2013)........................................ 2, 5, 9, 16, 18, 19, 22, 23

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
522 F.3d 1211 (11th Cir. 2008) ..........................................................12

*New Hampshire v. Maine*,
532 U.S. 742 (2001)......................................................................10

*PLIVA, Inc. v. Mensing*,
564 U.S. 1058 (2011)....................................................................16

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011).......................................... 2, 5, 14, 15, 18, 26

*Porter v. White*,
483 F.3d 1294 (11th Cir. 2007) ...........................................................20

*Rice v. Allergan USA, Inc.*,
No. 2:16-CV-01374, 2018 WL 1618036 (N.D. Ala. Apr. 4, 2018) ..................26

*Rowe v. Mentor Worldwide, LLC*,
297 F. Supp. 3d 1288 (M.D. Fla. 2018)..................................................25

*Salinero v. Johnson & Johnson*,
995 F.3d 959 (11th Cir. 2021) ...........................................................23

*Sebastian v. Ortiz*,
918 F.3d 1301 (11th Cir. 2019) ............................................................7

*Tinkler v. Mentor Worldwide, LLC*,
No. 1:19-CV-23373, 2019 WL 7291239 (S.D. Fla. Dec. 30, 2019) ..................25

*In re Trasylol Prods. Liab. Litig.*,
763 F. Supp. 2d 1312 (S.D. Fla. 2010)..................................................26

*Tsavaris v. Pfizer, Inc.*,
   717 F. App'x 874 (11th Cir. 2017) ....................................................25

*United States v. Campbell*,
   26 F.4th 860 (11th Cir. 2022) ...........................................................11

*Westerfield v. Corin Grp., PLC*,
   No. 8:19-cv-00146, 2019 WL 1233634 (M.D. Fla. Mar. 15, 2019) .................25

*Williams v. St. Jude Med., S.C., Inc.*,
   No. 1:16-CV-04437, 2017 WL 11113322 (N.D. Ga. Oct. 19, 2017)................26

**Statutes**

21 U.S.C. § 337 ..................................................................................19, 24

21 U.S.C. § 352 ..................................................................................14, 18

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1407 .........................................................................................1

28 U.S.C. § 1332 .........................................................................................1

**Other Authorities**

21 C.F.R. § 201.57(e)..................................................................................14

## STATEMENT REGARDING
## ADOPTION OF BRIEFS OF OTHER PARTIES

The Generic and Store Brand Defendants adopt by reference the brief of the Brand Defendants-Appellees (filed July 25, 2024). Fed. R. App. P. 28(i); 11th Cir. R. 28-1(f).

## STATEMENT OF JURISDICTION

These are appeals from cases that were consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407 before the United States District Court for the Southern District of Florida.  MDL.Dkt.1; *see* MDL.Dkt.2512:3; MDL.Dkt.3750:3–4.[2]  The district court had subject-matter jurisdiction over the putative class actions pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered final judgments.

---

[2] This brief refers to MDL docket entries as "MDL.Dkt." and refers to docket entries in this Court's appellate docket (all of which refer to docket entries in *Chandler*, No. 21-12618) as "CA11.Dkt."  In accordance with Eleventh Circuit Local Rule 28-5, this brief cites to all record documents, other than transcripts, using the document's internal pagination.

**INTRODUCTION**

The district court correctly dismissed the class-action complaints filed against the Generic Defendants and the Store Brand Defendants because federal law preempts Plaintiffs' claims against these Defendants.

The fundamental question to be asked in a preemption case is whether the defendant can independently do what needs to be done to avoid liability under a state cause of action while remaining in compliance with federal law. If the defendant cannot do so—*i.e.*, if federal law prohibits the manufacturer from making the change without the FDA's approval, or if the only way to comply with both the asserted state-law duty and federal law is to stop selling the drug altogether—then the state-law claims are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011); *Mut. Pharm. Co. v Bartlett*, 570 U.S. 472 (2013).

Here, all of the claims in the class-action complaints were based on allegations that the Defendants should have changed the design or label of ranitidine. Because the Generic Defendants and the Store Brand Defendants could not independently make those changes, all of Plaintiffs' claims against them are preempted under *Mensing* and *Bartlett*. The district court weighed and measured each and every claim made by Plaintiffs across multiple pleadings and properly found them wanting. This Court should affirm.

## <u>STATEMENT OF THE ISSUES</u>

This brief addresses two issues raised by Plaintiffs' appeal as they pertain to the Generic Defendants and Store Brand Defendants:

1.      Have Plaintiffs forfeited their preemption arguments in this appeal?

2.      Did the district court correctly hold that the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") preempts Plaintiffs' claims against the Generic Defendants and Store Brand Defendants?

## STATEMENT OF THE CASE

The district court overseeing this Multi-District Litigation ("MDL") appointed a slate of lead Plaintiffs' counsel, which included the lead attorneys for the putative class actions. Plaintiffs' leadership was responsible for class discovery, general causation and expert discovery, and briefing. MDL.Dkt.6484:1 n.2. The court-appointed counsel that could serve the different groups of Plaintiffs, including the putative classes and those alleging personal injury. MDL.Dkt.685:3, 13–16.

Pursuant to this agreed structure, Plaintiffs' lead counsel filed three master complaints in June 2020: a putative consumer economic loss class-action complaint ("CELC") that included economic-loss and medical-monitoring claims, a personal injury complaint, and a third-party payor class complaint. MDL.Dkt.887; MDL.Dkt.888; MDL.Dkt.889. Each complaint asserted a variety of state-law claims—all hinging on Plaintiffs' central allegation that ranitidine use causes cancer. *See, e.g.*, MDL.Dkt.889 ¶ 745.

In Pretrial Order #36, the district court set a schedule for the filing and briefing of motions to dismiss directed to the master complaints under Rule 12. MDL.Dkt.1346. Defendants moved to dismiss each complaint, and the district court granted these motions on several grounds, including impermissible shotgun pleading and preemption. *See* MDL.Dkt.1580; MDL.Dkt.1582; MDL.Dkt.1583; MDL.Dkt.1584; MDL.Dkt.1585; MDL.Dkt.1588; MDL.Dkt.1630; MDL.Dkt.2037;

MDL.Dkt.2040; MDL.Dkt.2044; MDL.Dkt.2045; MDL.Dkt.2512; MDL.Dkt.2513; MDL.Dkt.2515; MDL.Dkt.2516; MDL.Dkt.2532; MDL.Dkt.2840.

With respect to preemption, the district court dismissed Plaintiffs' claims against Generic and Retailer Defendants—in both the class-action complaint and personal-injury complaint—under the Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 477 (2013). The district court held that because it was impossible for these Defendants to comply with both the alleged state-law duty and federal law, federal law preempted the alleged state-law duties. *See generally* MDL.Dkt.2512; MDL.Dkt.2513.

Following the district court's orders dismissing the original complaints, Plaintiffs filed three new master complaints—an Amended Consumer Economic Loss Class complaint ("ACELC"), a Medical Monitoring Class complaint ("MMC"), and an Amended Personal Injury Complaint ("AMPIC")—alleging that ranitidine causes cancer and was "inherently defective" and "unreasonably dangerous." MDL.Dkt.2835:5; *see also* MDL.Dkt.2759:116; MDL.Dkt.2832-1:235. The Defendants all filed motions to dismiss. MDL.Dkt.3105; MDL.Dkt.3107; MDL.Dkt.3108; MDL.Dkt.3109; MDL.Dkt.3111; MDL.Dkt.3112; MDL.Dkt.3113; MDL.Dkt.3114; MDL.Dkt.3115; MDL.Dkt.3116.

The claims in the ACELC against the Generic Defendants and Store Brand Defendants were variously premised on alleged failure to shorten expiration dates, alleged failure to properly package the products, and alleged failure to warn the FDA. *See* MDL.Dkt.2835:372–476. The MMC generally alleged failure to warn, failure to shorten expiration dates, negligent product containers, negligent storage and transportation, and failure to warn the FDA. *See* MDL.Dkt.2832-1:115–122, 138–231. The AMPIC, on behalf of individual plaintiffs, asserted many of the claims found in both the ACELC and MMC. MDL.Dkt.2759. Different from the AMPIC, the ACELC and MMC named specific defendants, which included (in addition to the Brand and Generic Defendants) a handful of retailers and pharmacies that Plaintiffs referred to as "Store Brand Defendants." MDL.Dkt.2835:21–22; MDL.Dkt.2832-1:21–23.

Plaintiffs conceded at oral argument that all of the ACELC and MMC claims "are necessarily preempted if the claims against [Defendants] in the AMPIC are preempted." MDL.Dkt.3683:206. And the district court ultimately determined that the duty-to-warn-the-FDA claims in the ACELC and MMC were preempted under *Buckman* and *Mink*, and that the ACELC's and MMC's other claims against the Generic Defendants and Store Brand Defendants were rooted in failure to warn and design defect and therefore preempted under *Mensing* and *Bartlett*. MDL.Dkt.3750.

Thus, the district court dismissed with prejudice all claims in the ACELC and MMC raised against the Generic and Store Brand Defendants.

This appeal followed.

## STANDARD OF REVIEW

This Court reviews de novo a district court order granting a motion to dismiss. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

This Court should reject Plaintiffs' challenge to the district court's orders dismissing Plaintiffs' class-action complaints on preemption grounds.

First, Plaintiffs are judicially estopped from raising their preemption arguments in this appeal because they (successfully) told the Court they would raise preemption arguments *only in the Generic-only appeal* (*i.e., Chandler*, No. 21-12618).[3] And Plaintiffs have further forfeited their preemption arguments in this appeal because the briefing they purport to incorporate by reference addresses the dismissal of *an entirely different complaint*.

Further, Plaintiffs have forfeited their arguments as to the Store Brand Defendants on two *additional* grounds: (1) Plaintiffs' opening brief *in this appeal*

---

[3] This brief refers to the opening brief Plaintiffs filed in this class-action appeal—*i.e., Adams*, No. 23-12742—as "*Adams* Br." This brief refers to the opening brief Plaintiffs filed in the Generic-Only appeal—*i.e., Chandler*, No. 21-12618—as "Generic-Only Br."

only purports to challenge the district court's preemption ruling "dismissing the Economic Loss and Medical Monitoring Plaintiffs [sic] claims *against the generic defendants*," *Adams* Br. at 45 (emphasis added), and (2) Plaintiffs' incorporated-by-reference arguments do not address at least two independent bases upon which the district court rejected their parallel misbranding theory as applied to Retailers (which include the Store Brand Defendants).

Second, the district court's preemption rulings are correct.

Plaintiffs attempt to evade preemption via a "parallel misbranding" theory that the district court properly rejected. The theory is foreclosed by *Mensing* and *Bartlett* and is deficient on its own terms. Plaintiffs' claims are the same as those that were made—and rejected—in *Mensing* and *Bartlett*. Nor has *any* court held that the footnotes in *Bartlett* create an exception to preemption. And even if there were such an exception, it would only apply to a "pure" design defect claim that did not turn on the adequacy of the drug's labeling—and Plaintiffs' class-action complaints did not assert such a claim.

The district court also properly rejected Plaintiffs' "sub-duties" theory—which they do not raise against any Store Brand or Retailer Defendants, *see* Generic-Only Br. at 44–57—because the purported "sub-duties" were not "cognizable (and divisible) legal duties, let alone the duties to be used for comparison in federal pre-emption analysis." As this Court explained in *Guarino v. Wyeth, LLC*, plaintiffs may

not "attempt to elude" impossibility preemption "by clothing" the allegations supporting their state-law claims in terms of new theories of liability. 719 F.3d 1245, 1249 (11th Cir. 2013). State-law claims are preempted if, "at bottom," they rest on "allegations regarding" labeling or design defects that generic defendants could not have fixed while complying with the federal "duty of sameness." *Id.*; *see Bartlett*, 570 U.S. at 486–87. That was the case here because Plaintiffs' core theory remained that, due to ranitidine's molecular design, no ranitidine product is safe to ingest. The district court also properly found the allegations the Generic Defendants should have warned the FDA were preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001), and *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319 (11th Cir. 2017).

## ARGUMENT

## I.      Plaintiffs Have Forfeited Their Chance To Raise Preemption Arguments in This Appeal.

Plaintiffs' opening brief in this class-action appeal purports to "incorporate by reference" the arguments made in "Parts II and III of the Generic-Only Plaintiffs' opening brief." *Adams* Br. at 45. This supposed incorporation, however, violates this Court's briefing order of December 26, 2023. CA11.Dkt.355. The Court's briefing order authorized the parties to "incorporate by reference" briefs filed in other appellate dockets in *one* narrow circumstance: The parties' briefs in the *Adams* class-action appeal "may incorporate by reference the consolidated briefing discussed

below"—*i.e.*, "the same, consolidated initial brief" filed in multiple appellate dockets and subject to the double-length 28,000-word limit. CA11.Dkt.355:2–3. Plaintiffs' class-action brief, however, purports to incorporate by reference their *Generic-Only* Brief—*not* their consolidated, double-length Omnibus Brief.[4]

Further, the Court's briefing order was based on Generic-Only Appellants' motion stating that the other appeals will have "***nothing to do with preemption***," CA11.Dkt.336:2 (emphasis added). And because Plaintiffs told the Court this appeal would not implicate preemption issues, judicial estoppel prevents them from raising those issues now.

Judicial estoppel is an equitable concept that protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). For judicial estoppel to apply, courts consider three factors: (1) whether a party has taken a position that is "clearly inconsistent" with an earlier position, (2) whether a party succeeded in persuading the tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position creates the

---

[4] Whereas Plaintiffs' *Adams* Brief impermissibly purports to incorporate another party's brief in a *different* appellate docket outside the narrow circumstances authorized by the Court's briefing order, this brief incorporates another party's brief in the *same* appellate docket. This latter approach is expressly authorized by Federal Rule of Appellate Procedure 28(i), which provides that in "a case involving more than one appellant or appellee, including consolidated cases, … *any party may adopt by reference a part of another's brief*." (emphasis added).

perception that the court was misled, and (3) whether acceptance of the inconsistent position would derive an unfair advantage to the opposing party. *Id.*

Each factor applies here: (1) Plaintiffs originally asked for Generic-Only preemption briefing separate from the other appeals, (2) this Court entered an Order over the objections of Defendants establishing separate Generic-Only briefing, and (3) Plaintiffs have gained an unfair advantage in having sought separate briefing with expanded word counts for some of the briefs. Because Plaintiffs should be judicially estopped from raising arguments *they told the Court they would not raise*, the Court should deem Plaintiffs' preemption-based arguments abandoned for purposes of all cases other than the Generic-Only cases in which those arguments were presented. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (holding that issues not properly presented on appeal are deemed forfeited and will not be addressed absent extraordinary circumstances), *cert. denied*, 143 S. Ct. 95 (2022).

Beyond contradicting their prior representation that this appeal would not raise preemption issues, Plaintiffs' incorporated-by-reference preemption arguments fail because they do not address the dismissals of the CELC, ACELC, or MMC. Unsurprisingly, the Generic-Only Brief—filed by 18 personal-injury plaintiffs— addresses only the dismissal of the *personal injury complaints*; the brief never even mentions the economic-loss or medical-monitoring complaints. *See* Generic-Only

Br. at 12, 14 (discussing orders whereby the "district court dismissed claims in the MPIC" and "dismissed claims in the AMPIC"). Plaintiffs have thus forfeited any challenge to the dismissal of their *class-action* complaints on preemption grounds. *See, e.g., N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) ("This circuit has consistently held that issues not raised on appeal are abandoned.").

Finally, Plaintiffs have plainly forfeited their preemption arguments as to the Store Brand Defendants in particular.

First, *none* of Plaintiffs' briefs—including the class-action brief they filed in this appeal—mention the Store Brand Defendants at all. Indeed, Plaintiffs' class-action brief asserts only that the "district court misapplied preemption doctrine by dismissing the Economic Loss and Medical Monitoring Plaintiffs [sic] claims against the *generic defendants*." *Adams* Br. at 45 (emphasis added). Plaintiffs' class-action complaints clearly distinguish between Generic and Store Brand Defendants. Because Plaintiffs' opening briefs fail to even *ask* the Court to reverse the judgments in favor of the Store Brand Defendants, they have forfeited any chance they had to challenge the dismissal of their claims against these Defendants.

Second, even accounting for the Generics-Only Brief, Plaintiffs' opening briefs do not address the specific and distinct bases upon which the district court rejected Plaintiffs' "parallel misbranding" theory as to the Retailer Defendants (of

which Store Brand Defendants are a subset). In particular, as its first reason for rejecting Plaintiffs' misbranding theory asserted against the Retailer Defendants, the district court held that "Plaintiffs *have not plausibly alleged* that the [Retailers and Distributors] *knew* that the drugs were misbranded or otherwise could have detected the alleged defects in the ranitidine molecule." MDL.Dkt.2513:30 (first emphasis added); *see also id.* (citing *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 929–30 (6th Cir. 2014)). Plaintiffs' Generic-Only Brief does not address this point. And their brief likewise does not address the district court's second reason for rejecting Plaintiffs' parallel misbranding theory as to the Retailer Defendants—that such a theory could possibly be viable only in connection with "pure design-defect claims," which by definition "could only be brought against a manufacturer—not a retailer or a distributor." MDL.Dkt.2513:30 (citing *In re Darvocet*, 756 F.3d at 929–30). Either of these rulings is sufficient to reject Plaintiffs' parallel misbranding theory—and is thus sufficient to affirm the district court's preemption ruling as to the Store Brand Defendants. This Court should do so.

## II.     Notwithstanding Plaintiffs Fatal Procedural Errors, the District Court Properly Held "Misbranding" and "Stop Selling" Claims Were Preempted.

Plaintiffs' misbranding argument also fails on the merits, for it is squarely foreclosed by *Mensing* and *Bartlett*.

In *Mensing*, the plaintiffs "pleaded that the Manufacturers knew or should have known of the high risk of tardive dyskinesia inherent in the long-term use of their product," and they "also pleaded that the Manufacturers knew or should have known that their labels did not adequately warn of that risk." *Mensing*, 564 U.S. at 611. Assuming the truth of those allegations, plaintiffs and the United States (on behalf of the FDA) expressly and repeatedly argued—just like Plaintiffs here—that the state and federal duties were parallel because the federal misbranding statute prohibited the sale of misbranded drugs. *See, e.g., PLIVA v. Mensing*, Case Nos. 09-993, 09-1039, and 09-1501, at 30 (U.S. Mar. 2011) (Brief for United States as *amicus curiae*) ("In addition to whatever claim [plaintiffs'] allegations state under state law, they would also establish that [the generic manufacturer's] products were misbranded under 21 U.S.C. § 352(f)(2) because those drugs would lack adequate warnings."); 13 ("The question for preemption purposes . . . is whether the generic drugs respondents took were misbranded under 21 U.S.C. § 352(f)(2) and the standard in 21 C.F.R. § 201.57(e).").

It made sense for plaintiffs in *Mensing* to raise the parallel misbranding argument in the Supreme Court. After all, the court of appeals had relied on that argument in holding that plaintiffs' claims were not preempted by federal law. *See Mensing v. Wyeth, Inc.*, 588 F.3d 603, 606, 611 n.6 (8th Cir. 2009) (explaining that "[m]anufacturers cannot distribute a 'misbranded' drug, 21 U.S.C. §§ 331(a)-(b),

including a drug whose 'labeling is false or misleading in any particular'"), *rev'd sub nom. PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011).

The Supreme Court acknowledged plaintiffs' and the FDA's arguments based on misbranding. *See Mensing*, 564 U.S. at 616 (acknowledging misbranding argument). Unlike the court of appeals, however, the Supreme Court **rejected** it, holding that the state-law claims were preempted because "it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal-law duty to keep the label the same." *Id.* at 618. Ultimately, the Supreme Court found it unnecessary to resolve whether the manufacturers were obligated to seek a change in their labeling under the federal "misbranding" law because it found "pre-emption *even assuming such a duty existed.*" *Id.* at 617 (emphasis added). If Plaintiffs' "misbranding" argument were correct, *Mensing* would have come out the other way.

If that were not enough, plaintiffs in *Mensing* filed a petition for rehearing that—once again—argued "the actual state law duties paralleled federal law and could have been satisfied by Petitioners independently, without any action by the FDA or any other party." *PLIVA, Inc. v. Mensing*, Nos. 09-993, 09-1039, 09-1501, 2011 WL 2874547, at *3–4 (U.S. July 18, 2011) (respondents' petition for rehearing). Indeed, their argument could have been lifted from Plaintiffs' Generic-Only Brief. *Id.* at *3; *compare* Generic-Only Br. at 18, 33–38. Yet again, the

Supreme Court rejected that argument. *PLIVA, Inc. v. Mensing*, 564 U.S. 1058 (mem.) (2011) (denying rehearing petition). Thus, as the district court noted in a later ruling again explaining its reasoning for dismissing the MPIC claims, the "problem with the Plaintiffs' argument [was that] their precise argument had already been presented to the Supreme Court, which rejected the argument not once, but twice." MDL.Dkt.3715:21.

The Court again underscored this point in *Bartlett*. There, the Court addressed a New Hampshire design-defect claim brought against a generic manufacturer, alleging a failure to ensure that the drug was reasonably safe. 570 U.S. at 475. Under New Hampshire law—and, as the Court observed, the law of most states, *id.* at 485, n.2—a manufacturer could satisfy its duty to ensure its drug was reasonably safe "either by changing a drug's design or by changing its labeling," *id.* at 482. As a matter of federal law, however, the generic manufacturer could neither make the drug "in another composition," *id.* at 484, nor take "the remedial action required to avoid liability" by changing the labeling, *id.* at 486. It was thus "impossible for [the defendant] and other similarly situated manufacturers to comply with both state and federal law," which foreclosed the plaintiff's claim under straightforward conflict-preemption principles. *Id.* at 486–87.

After *Mensing* and *Bartlett,* federal courts across the country have rejected, as preempted, claims that generic drug manufacturers had distributed misbranded

drugs. *See, e.g., Gardley-Starks v. Pfizer, Inc.,* 917 F. Supp. 2d 597, 607 (N.D. Miss. 2013); *Moretti v. PLIVA, Inc.*, No. 2:08-CV-00396, 2012 WL 628502, at *2, 5 (D. Nev. Feb. 27, 2012), *aff'd sub nom. Moretti v. Wyeth, Inc.*, 579 F. App'x 563 (9th Cir. 2014); *Moretti v. Mut. Pharm. Co.*, 852 F. Supp. 2d 1114, 1118 (D. Minn. 2012), *aff'd*, 518 F. App'x 486 (8th Cir. 2013); *Metz v. Wyeth, LLC*, No. 8:10-CV-2658, 2011 WL 5024448, at *4 (M.D. Fla. Oct. 20, 2011).

With every relevant FDCA preemption case against them, Plaintiffs offer a novel theory by which they seek to evade preemption. They insist their state-law claims "parallel the federal misbranding statute" on the ground that "the FDCA and state law required the Generic Defendants to withdraw their drugs from the market because they were unsafe." Generics-Only Br. at 28. That theory, however, is ultimately only a repackaging of the "stop-selling" rationale that *Mensing* and *Bartlett* have already repudiated. *See* MDL.Dkt.3715:19–26 (district court emphasizing this point). And notably, Plaintiffs have not even pleaded any state-law "requirement" to stop selling.

Further, as the district court observed, Plaintiffs' parallel misbranding theory, if accepted, "would render the vast body of pre-emption caselaw in the drug context, including binding Supreme Court decisions, meaningless." MDL.Dkt.2512:28. After all, the FDCA misbranding provision that Plaintiffs invoke deems a drug misbranded "[i]f it is *dangerous to health* when used in the dosage or manner or with

the frequency or duration prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 352(j) (emphasis added). Of course, the plaintiffs in nearly *any* drug-defect case can argue—and the plaintiffs in *all* of these Supreme Court cases *did* argue—that the drugs at issue were dangerous to health when used in accordance with the drug labels. *See Mensing*, 564 U.S. at 610 (tardive dyskinesia); *Bartlett*, 570 U.S. at 478 (toxic epidermal necrolysis). All these plaintiffs thus could have argued—and some *did* argue—that the drugs were therefore misbranded under federal law and that there was no conflict in imposing state-law liability for selling them. The Supreme Court, however, held the state-law claims preempted.

Put another way, *Mensing* and *Bartlett* evaluated the existence of a conflict between state and federal law by focusing on the actions the defendants could take to "render[] [their products] reasonably safe"—*i.e.*, either fix the products or change their instructions and warnings. *Bartlett*, 570 U.S. at 488; *see also Mensing*, 564 U.S. at 618 ("If the Manufacturers had independently changed their labels to satisfy their state-law duty, they would have violated federal law."). *That* is the dispositive question. And here, there is no dispute that federal law prohibited the Generic Defendants and Store Brand Defendants from taking any action that would have made ranitidine "reasonably safe" to sell under state law. [5]

---

[5] For similar reasons, the district court's decision is also consistent with Justice Thomas' plurality analysis in *Mensing*. Federal law imposes a "duty of sameness" that conflicts with and thus impliedly repeals state-law claims that impose a contrary

Moreover, the FDA's request for a voluntary market withdrawal does not alter the legal landscape. As Plaintiffs conceded below, the agency never found ranitidine to be misbranded. MDL.Dkt.2499:137 (conceding that FDA "didn't technically go through the mandatory recall provision, and they didn't make a misbranding finding, and we never stated anything to the contrary.") And in any event, a violation of the misbranding statute may only be enforced by the FDA. *See* 21 U.S.C. § 337(a); *Buckman*, 531 U.S. at 352.

Lastly, this Court should reject Plaintiffs' attempts to impose a new analytical framework for implied preemption based on "basic logic" or reliance on inapposite express preemption decisions. This Court does not write on a blank slate. The "basic logic of conflict preemption" derives from the Supremacy Clause, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992), and the Supreme Court has been interpreting that clause for centuries. Thus, it is inappropriate to assess a claim of implied preemption by relying on caselaw addressing express preemption. MDL.Dkt.2512:36-37.

Plaintiffs' theory is simply irreconcilable with decades of drug cases addressing preemption under the FDCA. *See, e.g., Bartlett*, 570 U.S. at 487 n.3, 488 (stating that precedent "forecloses any argument that impossibility is defeated" by a

---

duty to change warnings or change design. Notably, Justice Thomas also authored the majority opinion in *Mensing*, which the Court declined to reconsider when plaintiff petitioned for rehearing based on a parallel misbranding argument.

consideration that "would have defeated impossibility" in cases where the Court previously held that impossibility preemption applied, and stressing that "[t]he incoherence of" plaintiff's theory "becomes plain when viewed through the lens of our prior cases"). The Court should therefore "reject this reasoning as inconsistent with Supreme Court precedent." *Porter v. White*, 483 F.3d 1294, 1306 (11th Cir. 2007). Plaintiffs' claims are preempted, and the district court's decision should be affirmed.

### III. The District Court Properly Rejected Plaintiffs' Argument that "Sub-Duties" Should Control the Preemption Analysis in the ACELC and MMC.

Plaintiffs argue that their failure to warn and negligence claims in the ACELC and MMC are not preempted by federal law because even though such claims require Generic Defendants to do things they could not independently do under federal law, those general duties had "sub-duties" within them. MDL.Dkt.3750:31. But when the district court inquired of plaintiffs' counsel as to the basis of these duties and alleged claims, counsel acknowledged that they were "just a negligence claim." MDL.Dkt.3683:178. In fact Plaintiffs' counsel conceded, "we are not trying to say there is such a granular cause of action . . . It is still going to be just the general common law failure to warn." MDL.Dkt.3683:181. And Plaintiffs conceded that all of the ACELC and MMC claims "are necessarily preempted if the claims against them in the AMPIC are preempted." MDL.Dkt.3683:206. Based on the broad

allegations in the complaints, coupled with counsel's own statements, the district court "reject[ed] the Plaintiffs' theory that 'sub-duties' are cognizable (and divisible) legal duties, let alone duties to be used for comparison in federal pre-emption analysis." MDL.Dkt.3750:35. The district court therefore found the claims asserted against the Generic Defendants preempted under *Mensing* and *Bartlett*. *See also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319 (11th Cir. 2017); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014).

The district court properly rejected Plaintiffs' attempts to create custom-made causes of action based on facts pled in the complaint. Determining a defendant's precise duty is key to the preemption analysis, and despite being provided the opportunity to provide authority for their argument, Plaintiffs provided nothing that would support the position that the relevant duties should be anything other than the recognized duty to use reasonable care or duty to warn. To the contrary, the district court noted, "there is no such tort as 'Negligent Choosing and Making of Containers' or 'Negligent Transporting and Storing of Products.'" MDL.Dkt.3750:33. Instead, the alleged failures to package or transport a product are "merely fact patterns that would permit a plaintiff to bring the tort of ordinary negligence." MDL.Dkt.3750:33. Plaintiffs' sub-duties, then, were theories of breach, not independent duties supporting some new cause of action that could avoid preemption. The district court

properly concluded that "sub-duties" were not "cognizable (and divisible) legal duties, let alone the duties to be used for comparison in federal pre-emption analysis." MDL.Dkt.3750:35.

Indeed, as this Court explained in *Guarino*, Plaintiffs may not "attempt to elude" the Supreme Court's conflict preemption precedents "by clothing" the allegations supporting their state-law claims in terms of new theories of liability. 719 F.3d at 1249. State law claims are preempted if, "at bottom," they rest on "allegations regarding" labeling or design defects that generic defendants could not have fixed while complying with the federal "duty of sameness." *Id.*; *see Bartlett*, 570 U.S. at 486–87. That was the case here. As the district court explained:

> Plaintiffs have pled claims rooted in a broad theory of design defect. Contrary to the Plaintiffs' characterization of their pleadings, they have not brought narrow, independent claims against the Generic Manufacturer Defendants. **Their claims are tantamount to design defect claims, and design defect claims against generic drug manufacturers are preempted**.

MDL.Dkt.3750:40 (emphasis added; internal citations omitted). And again:

> Although the Plaintiffs replead their claims after the Court's dismissal, **the core of their pleadings remains virtually identical to the pleadings that the Court dismissed**. The plaintiffs still allege that ranitidine is a defectively designed molecule; it is highly unstable and apt to form a potent carcinogen. The Plaintiffs still allege that ranitidine is dangerous at all points in time from the moment it is manufactured; it is harmful when consumed as directed (particularly when accompanied by nitrites in

the stomach) and when stored at room temperature in accordance with its labeling, etc.

MDL.Dkt.3750:40 (emphasis added). The district court thus correctly concluded that the specific claims at issue are preempted by the FDCA and its implementing regulations. As in *Bartlett,* recognizing Plaintiffs' theories "would mean that not only [*Mensing*], but also the vast majority—if not all—of the cases in which the Court has found impossibility pre-emption, were wrongly decided." *Bartlett,* 570 U.S. at 489–90. The Court should refuse to do so.

Moreover, accepting Plaintiffs' invitation to blue-pencil the preempted allegations in Plaintiffs' causes of action also violates *Erie* principles because, by striking duties essential to the claims, the Court would be inventing new state-law claims. This it cannot do. *See Salinero v. Johnson & Johnson*, 995 F.3d 959, 966–67 (11th Cir. Apr. 29, 2021) (recognizing a "financial bias" exception to the learned intermediary doctrine "would amount to a sea change in the state's product liability law . . .Without some indication that Florida intends to recognize so significant a change in the law, a federal court sitting in diversity ought not to do so."); *Guarino v. Wyeth*, LLC, 719 F.3d 1245, 1251 (11th Cir. 2013); *Douglas Asphalt Co. v. QORE, Inc*., 657 F.3d 1146, 1154 (11th Cir. 2011).

As noted, the AMPIC itself does not limit the claims to only the alleged duty (or portion of the duty) that could be satisfied without violating federal law, even though the district court had previously instructed that "[u]pon any repleading,

23

Plaintiffs should consider, as to each cause of action, the elements under each state's law and what state law would require of Defendants to avoid liability" and omit them. MDL.Dkt.2512:29, 37. They did not do so. But even if they had, Plaintiffs have provided no authority that any state would recognize, for example, a failure-to-warn-through-expiration-date claim divorced from the actual state-law duty to give adequate warnings to the consumer of the risk of injury, or a negligent-product-containers claim divorced from the duty of ordinary care in negligence. Thus, Plaintiffs' request to convert their claims into materially different claims also fails under *Erie*.

IV.     **Federal Law Also Preempts Plaintiff's Failure-to-Warn-Through-the-FDA Claim.**

The FDCA gives the FDA exclusive authority to decide whether and how to enforce the FDCA. *See* 21 U.S.C. § 337(a); *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284 n.10 (11th Cir. 2002) ("[N]o private right of action exists for a violation of the FDCA."). In any event, a violation of the misbranding statute may only be enforced by the FDA. *See* 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter [including §§ 351–52] shall be by and in the name of the United States") (emphasis added). In *Buckman*, the Supreme Court made clear that the FDCA is "enforced exclusively by the Federal Government." 531 U.S. at 352 (citing 21 U.S.C. § 337(a)). Although certain state-law causes of action may "parallel federal safety requirements," it cannot be said

that "any violation of the FDCA will support a state-law claim." *Buckman*, 531 U.S. at 352–53.

This Court has made it clear that even if there is a cognizable state law cause of action for a failure to warn FDA, if the duty is ultimately owed to the plaintiff, such a claim nonetheless arises entirely out of FDA reporting obligations and as such is preempted under *Buckman*. In *Mink v. Smith & Nephew, Inc.*, this Court addressed a traditional state-law negligence claim brought against a medical device manufacturer that was based, in part, on a theory for "failure to report adverse events" to FDA. 860 F.3d 1319, 1329–30 (11th Cir. 2017). As in *Mink*, Plaintiffs' claims here are based on an alleged failure to submit annual reports and adverse event reports to FDA as required by *federal* regulations. *See* MDL.Dkt.2759 ¶¶ 438–45, 1390–1405 (citing 21 C.F.R. §§ 314.80, 314.81(b)(2)).

Since *Mink* was decided, this Court has affirmed the dismissal of failure to report adverse event claims brought against a brand-name drug manufacturer. *See Tsavaris v. Pfizer, Inc.*, 717 F. App'x 874, 877 (11th Cir. 2017). Multiple district courts within the Circuit likewise have dismissed similar claims. *See Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1295–96 (M.D. Fla. 2018); *Tinkler v. Mentor Worldwide, LLC*, No. 1:19-CV-23373, 2019 WL 7291239 (S.D. Fla. Dec. 30, 2019); *Grubbs v. Medtronic, Inc.*, No. 2:18-CV-01468, 2019 WL 3288263 (N.D. Ala. July 22, 2019); *Westerfield v. Corin Grp., PLC*, No. 8:19-cv-00146, 2019 WL

1233634 (M.D. Fla. Mar. 15, 2019); *Rice v. Allergan USA, Inc.*, No. 2:16-CV-01374,

2018 WL 1618036 (N.D. Ala. Apr. 4, 2018); *Williams v. St. Jude Med., S.C., Inc.*,

No. 1:16-CV-04437, 2017 WL 11113322 (N.D. Ga. Oct. 19, 2017); *see also In re*

*Trasylol Prods. Liab. Litig.*, 763 F. Supp. 2d 1312, 1329–30 (S.D. Fla. 2010).

The district court's decision is also supported by *Mensing*, where the Supreme

Court rejected the notion that preemption could be evaded by seeking FDA's

assistance to issue a warning. As pleaded, Plaintiffs' claim is based entirely on a

"duty to warn Plaintiffs of dangers associated with ranitidine." *See* MDL.Dkt.2759

¶ 1379; *see also id.* ¶ 1408. In *Mensing*, the Supreme Court considered tort causes

of action based on the exact same traditional failure to warn principles. *See Mensing*,

564 U.S. at 611. And it recognized that the generic manufacturers "could have asked

the FDA for help" in issuing a warning, which "might" have led the agency to decide

to issue a warning. *Id.* at 620. But the theory necessarily involves the FDA's

discretionary "exercise of judgment" as to whether to issue a warning, as opposed to

actions the manufacturers can "independently" take. *Id.* at 620–21, 623–24. Thus,

the "conjectures" about what FDA might do did not "prevent federal and state law

from conflicting for Supremacy Clause purposes," and did not save warning claims

from preemption. *Id.* at 621.

In sum, *Mensing*, *Mink,* and *Buckman* squarely foreclose Plaintiffs' argument.

Plaintiffs' Failure to Warn through the FDA claim is preempted.

## CONCLUSION

The district court properly held that the FDCA preempts the claims against the Generic Defendants and the Store Brand Defendants raised in the Consumer Economic Loss Complaint, the Amended Consumer Economic Loss Complaint and the Medical Monitoring Complaint. Plaintiffs have forfeited their challenge to these holdings multiple times over. And even if this Court were to reach the merits, it should affirm, because Plaintiffs' attempts to evade preemption are squarely foreclosed by binding precedent. The district court's judgments should be affirmed.

Respectfully submitted,

*/s/ Thomas J. Yoo*
Thomas J. Yoo
Amy McVeigh
Daniel Winters
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
(213) 896-2400

*Counsel for Appellee Glenmark*
*Pharmaceuticals USA Inc.*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellee Glenmark Pharmaceuticals USA Inc. certifies that this Answering Brief complies with Rule 32(a)(7)(B) and includes 5,869 words as calculated by the word processing program.

*/s/ Thomas J. Yoo*
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July, 2024 the foregoing Answer Brief has been electronically filed using the ECF filing system which will send notice of electronic filing to all counsel of record.

/s/ Thomas J. Yoo
Attorney